**FILED**

**AUG 3 1 2004**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PATRICIA L. BAKER,    )
Plaintiff pro se    )
3971 Clay Place N.E.    )
Washington, D.C.  20019
(202) 388-0504

CASE NUMBER  1:04CV01480

JUDGE: Ellen Segal Huvelle

v.

DECK TYPE: Employment Discrimination

UNITED STATES OF AMERICA,
DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue N.W.
Washington, D.C.  20530-0001

DATE STAMP: 08/31/2004

)
)
)
)
Defendant.    )

## COMPLAINT OF DISCRIMINATION UNDER
## THE REHABILITATION ACT OF 1973, AS AMENDED

### INTRODUCTION

1. This complaint states the United States Department of Justice despite having knowledge of

Plaintiff's health issues discriminated against Plaintiff by failing to afford her reasonable work

place accommodations and terminating her employment on Feb. 5, 2004 in violation of the

Rehabilitation Act of 1973, as amended.

### JURISDICTION AND VENUE

2. Plaintiff appealed her removal action via the U.S. Merit Systems Protection Board (MSPB):

*Patricia L. Baker, Appellant, v. Department of Justice, Agency,* Docket No. DC-0432-04-0340-

I-1. On May 13, 2004 a hearing was held with regard to this matter. On July 1, 2004, the Merit

Systems Protection Board handed down its ruling which was not favorable to Plaintiff. On page

21 of the MSPB's holding it states " . . . you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5." A copy of this ruling is attached.

## PARTIES

3. Plaintiff, Patricia L. Baker, was employed by the U.S. Department of Justice, Tax Division, Civil Trial Section, Southern Region and is a citizen of the United States. Plaintiff had been with the Department of Justice for almost five years.

4. Defendant, the U.S. Department of Justice (DOJ), is an agency of the United States government.

## FACTS

5. Plaintiff, an African-American female, was hired by the Defendant in October 1999 as a Paralegal Specialist, GS-9. Four years and a few months later the Defendant removed Plaintiff from her job with the federal service. DOJ claimed she failed one of the five critical elements of her position.

6. Plaintiff disclosed to her then Chief, Michael Kearns, on October 9, 2003, that she had a learning disability and other health issue (clinical depression) shortly after he notified Plaintiff of her proposed removal. She requested that her employment not end, that she be allowed to work with reasonable work place accommodations. Chief Kearns *agreed* to not fire Plaintiff saying that he would hold in abeyance her dismissal upon receipt of medical documentation from her confirming her health issues. Plaintiff provided the Agency with copies of her medical reports as

requested. Despite having complied with his request, the Defendant chose to end Plaintiff's employment with the Agency on Feb. 5, 2004.

7. The first two years of Plaintiff's employment with Defendant she received passing evaluations. The last two years of her employment, the Agency failed to provide Plaintiff with her annual evaluations.

## COUNT I - DISCRIMINATION ON THE BASIS OF HEALTH

8. Plaintiff's combined health issues, ADD and clinical depression was disabling and required accommodations. Plaintiff asked DOJ to not fire her on October 9, 2003 via an e-mail and allow her to continue her employment with reasonable work place accommodations. Plaintiff's medical documentation given to DOJ established that she was a "qualified person" with a disabling disability. DOJ's then representing attorney, Gregory Kelch, Esq. on or about February 2, 2004 told <u>Plaintiff and her Union Representative (Barbara Lott) that he would accept additional documentation regarding Plaintiff's ADD and clinical depression</u> *but the very next day,* Plaintiff's Chief, Michael Kearns, initiated an impromptu meeting with Plaintiff and handed her a dismissal letter. Accordingly, the Agency denied Plaintiff the opportunity to work with reasonable work place accommodations.

## COUNT II - DUTY TO CONSIDER PLAINTIFF"S MEDICAL EVIDENCE ~~AND~~

9. DOJ could have fired Plaintiff in October 2003 but chose to "hold in Abeyance" Plaintiff's dismissal on the basis of her verifying her health issues in response to Plaintiff's October 9, 2003 disclosure to DOJ via an e-mail of her disability and other health issue. The Agency was hereby

put on notice that Plaintiff in fact had medical issues and asked to not be fired and granted reasonable work place accommodations. By not terminating Plaintiff in October 2003, by having knowledge of Plaintiff's health issues, by knowing Plaintiff was a qualified disabled person, the Agency had a duty under the Rehabilitation Act of 1973, as amended, to consider Plaintiff's medical evidence and hold in Abeyance any termination or removal action.

## COUNT III - REASONABLE WORK PLACE ACCOMMODATIONS

10. Plaintiff was a "qualified disabled person" who deserved to be afforded reasonable work place accommodations pursuant to the Rehabilitation Act of 1973, as amended. Plaintiff had been diagnosed with ADD and clinical depression; these combined, substantially limited one or more of Plaintiff's life activities: work performance with regards to element one of her five critical elements. As stated in the MSPB's ruling:

> An agency's failure to accommodate the known ... mental limitations of a
>
> qualified disabled employee constitutes discrimination . . . *Trammell v.*
>
> *Department of Veterans Affairs*, 60 M.S.P.R. at 84 - 5 (1993).

11. DOJ failed to have in place a Disability Rights Coordinator as outlined in the Agency's own manual: "*Manual and Procedures for Providing Reasonable Accommodation*." As such, Plaintiff lacked the technical and proper assistance to help her identify appropriate work place accommodations. Plaintiff and her Union Representatives asked that disability specialists be allowed to attend their meetings with DOJ, but this request was denied by the Agency.

12. The Agency *failed to prove* that any reasonable work place accommodations designated for Plaintiff would cause DOJ any "undue hardships on its operations." On Plaintiff's DOJ Form

100A Request for Work Place Accommodation, Plaintiff provided the Agency with a tentative list of accommodations; this list was not meant to final, but rather a starting point. One of the items suggested by Plaintiff was the use of a hand-held tape recorder.

13. Plaintiff's medical reports were misconstrued by the Agency and MSPB with respects to the fact that Plaintiff had an office. Having an office in and of itself, does not negate the need for other or additional reasonable work place accommodations. There was a lot of noise in front of Plaintiff's office; people would stand in front of her door talk, joke, socialize, etc. Plaintiff tried to minimize the distractions by keeping her door shut, but this behavior "irritated" some of the attorneys she was assigned to work for.

## CONCLUSION

14. The U.S. Department of Justice discriminated against Plaintiff by not adhering to the requirements and protection bestowed upon her under the Rehabilitation Act of 1973, as amended.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests as relief for the above discrimination the following

remedies:

a. A declaratory judgement that Defendant discriminated against Plaintiff on the basis of health,

i.e., ADD and depression;

b. An injunction directing Defendant to reinstate her to her former grade or a substantially

equivalent position;

c. Back pay, retirement benefits and accruals and other make whole relief;

d. Compensatory damages as a result of the humiliation, embarrassment, pain, and suffering

caused by Defendant's conduct;

e. Such other relief as the Court deems right and just.


Respectfully submitted on, July 28, 2004.

Patricia L. Baker, Plaintiff pro se
3971 Clay Place N.E.
Washington, D.C. 20019
(202) 388-0504(h)

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WASHINGTON REGIONAL OFFICE

PATRICIA L. BAKER,                        DOCKET NUMBER
          Appellant,                      DC-0432-04-0340-I-1

      v.

DEPARTMENT OF JUSTICE,                    DATE: July 1, 2004
          Agency.


Barbara Kraft, Esquire, Washington, D.C., for the appellant.

Gregory Kelch, Esquire, Washington, D.C., for the agency.


### BEFORE
Sherry A. Armstrong
Administrative Judge


## INITIAL DECISION

On March 5, 2004, the appellant timely filed an appeal of the agency's action removing her from Federal employment. Appeal File (AF), Tab 1. The Board has jurisdiction over this appeal. *See* 5 U.S.C. § 4303(e) and 5 C.F.R. § 432.106(a). For the following reasons, the agency's action is AFFIRMED.

### BACKGROUND

At the time of her removal for unacceptable performance, the appellant occupied the position of Paralegal Specialist, GS-0950-09, in the Tax Division of the Civil Trial Section at the U.S. Department of Justice (agency). Agency File (Ag. File), Tab 4A. At the prehearing conference conducted in this appeal, the parties agreed to the following facts: The appellant was employed in the position

**FILED**

AUG 3 1 2004

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

of Paralegal Specialist, GS-9, in the Tax Division of the Department of Justice from October 1999 through February 5, 2004. *Id.* AF, Tab 21. In October 2000, Richard F. Mitchell, Assistant Chief of the Tax Division's Civil Trial Section, Southern Region, signed a performance appraisal record that rated the appellant's overall performance as "fully successful." AF, Tab 21. On or about May 1, 2002, Mr. Mitchell signed another performance appraisal record which rated the appellant's overall performance as "meets standards." *Id.* Ag. File, Tab 4X. However, Mr. Mitchell specifically noted that, with respect to Critical Element 1 involving the drafting of legal documents:

> In view of the pass/fail format of the evaluation process, and the absence to date of any formal notice of Ms. Baker as to specific concerns with Critical Element 1 (drafting and document preparation), she is given a "meets standards" rating at this time. Nonetheless, Ms. Baker's drafting and document preparation are not adequate for the needs of her attorneys; her written materials are often wordy and contain grammar or syntax errors. Her document preparation often discloses a failure to grasp basic concepts, or a failure to follow directions. Even when she is given a sample document to follow, her work requires substantial editing and revision.

*Id.* Mr. Mitchell further noted that, while the appellant "continues to meet the standards necessary as a section paralegal,...she needs to pay closer attention to work and to focus on priorities and the allocation of her time; her work regularly contains errors, which need attention and correction." *Id.*

Approximately one week later, on May 9, 2002, Mr. Mitchell sent the appellant a letter describing deficiencies in her performance and advising her that her performance would be reviewed in 90 days. AF, Tab 21; Ag. File, Tab 4W. He further stated that, if the appellant's performance did not improve, she would be subject to a performance improvement plan (PIP) and that noncompliance with the PIP could result in reassignment, demotion or removal. *Id.*

On January 7, 2003, Mr. Mitchell wrote again to the appellant and noted that her performance with respect to two critical elements (drafting legal

documents and handling routine written and oral communications) was unacceptable and he provided examples of her poor performance. AF, Tab 21; Ag. File, Tab 4V. The letter stated that the appellant was being placed on a PIP. *Id.* It stated that Mr. Mitchell would monitor the appellant's performance for 90 days and, thus, the PIP would last until April 8, 2003. *Id.* Mr. Mitchell informed the appellant that her performance must improve within 90 days and that she was required to sustain acceptable performance for one year. *Id.* If she failed to do so, she was advised that he would propose her demotion or removal. *Id.* The letter further instructed the appellant to meet with certain managers every other Tuesday to review her performance. *Id.* It also encouraged the appellant to consult the agency's Employee Assistance Program and to provide Mr. Mitchell with medical information if she believed that a medical problem was causing her performance problems. *Id.* Mr. Mitchell also proposed to provide the appellant with technical assistance and training. *Id.* It is undisputed that the appellant provided the agency with no evidence of any medical issue. AF, Tab 21.

On August 11, 2003, four months after the conclusion of the PIP period, Mr. Mitchell proposed the appellant's removal based on poor performance with respect to Critical Element 1 (drafting legal documents). AF, Tab 21; Ag. File, Tab 4H. The proposal notice included examples of deficiencies in the appellant's work and explained that she could make an oral or written reply within 10 days. *Id.* The 10 day period was extended at the appellant's request. AF, Tab 21; Ag. File, Tabs 4C and 4D.

On August 26, 2003, the appellant responded to the proposal to remove in a memo addressed to Section Chief Michael J. Kearns. AF, Tab 21; Ag. File, Tab 4G. In her response, the appellant noted that her mistakes were fewer than those that Mr. Mitchell had pointed out in the examples appended to the August 11, 2003, proposal to remove notice. *Id.* The appellant did not notify the agency of any disability. *Id.*

By letter dated October 7, 2003, Mr. Kearns issued a letter upholding the agency's removal action. AF, Tab 21; Ag. File, Tab 4F. The appellant's removal was to be effective October 17, 2003. *Id.* However, on that date, Mr. Kearns notified the appellant that he was temporarily holding her removal in abeyance until November 14, 2003. AF, Tab 21; Ag. File, Tab 4D. In the letter issued to the appellant, Mr. Kearns referenced a meeting held on October 16, 2003, with himself, the appellant, Phyllis Wolfteich from the agency's Human Resources Division, and union officials Barbara Lott, Wonder Moore-Davis and Kristal Walker. *Id.* In that meeting, the appellant notified the agency that she had a learning disability requiring accommodation. AF, Tab 21. In a letter dated October 17, 2003, Mr. Kearns requested that the appellant provide medical documentation in support of her accommodation request. *Id.*; Ag. File, Tab 4F. Mr. Kearns further provided a form to the appellant that authorized the appellant's treating physician to communicate directly with Mr. Kearns or Ms. Wolfteich. *Id.* The appellant declined to authorize this communication.

On or about November 7, 2003, Ms. Moore-Davis wrote to Ms. Wolfteich to respond to Mr. Kearns' request for medical documentation. AF, Tab 17, Appellant's Exhibit F; AF, Tab 21. In her letter, Ms. Moore-Davis stated again that the appellant suffered from a learning disability and another medical condition that she had elected not to disclose. *Id.* With her letter, Ms. Moore-Davis enclosed correspondence from Dr. Rona Fields, the appellant's treating psychologist, and a copy of the appellant DOJ Form 100A, Request for Reasonable Accommodation. *Id.*

On November 14, 2003, a week after Ms. Moore-Davis' letter to Ms. Wolfteich, Mr. Kearns wrote the appellant a letter acknowledging receipt of medical information that the appellant provided on November 7, 2003. AF, Tab 21; Ag. File, Tab 4C. Mr. Kearns' letter stated that he would continue to hold the removal in abeyance and he proposed to meet with the appellant on

Monday, November 17, 2003. *Id.* He further instructed the appellant that, "while the removal is held in abeyance, you should report to work as usual." *Id.*

On November 18, 2003, Mr. Kearns sent the appellant an electronic mail message with additional questions about the nature, duration and limitations of her medical condition, and asking her to meet with him and Ms. Wolfteich on November 20, 2003. AF, Tab 17, Appellant's Exhibit G; AF, Tab 21. He also noted that the appellant should designate the union as her representative if she desired their representation in connection with her removal. *Id.* The appellant responded to Mr. Kearns' message and stated that, because she was not being removed "at the present time, [she had] no need to appoint a representative." *Id.* The appellant stated that she could not meet with Mr. Kearns on November 20, 2003 but that she would contact her doctor for the additional information, and would "express the urgency that she respond to your need for additional information or responses to your questions below that are allowable by law ASAP." *Id.* The appellant's response stated that she did not see any reason to meet with Mr. Kearns and Ms. Wolfteich until the doctor had responded with the additional information. *Id.*

By letter dated February 3, 2004, Mr. Kearns notified the appellant that the earlier decision to terminate her employment with the agency was in effect and that the appellant would be removed effective February 5, 2004. AF, Tab 21; Ag. File, Tab 4B. The appellant timely appealed her removal to the Merit Systems Protection Board. AF, Tab 1. This completes the facts as agreed upon by the parties. AF, Tab 21.

The appellant alleges that the agency's action resulted from disability discrimination based on its failure to accommodate a disabling condition of Attention Deficit Disorder (ADD) and depression. AF, Tabs 1, 18, and 21. The agency denies the appellant's allegation. AF, Tabs 19 and 21. A hearing was held at the appellant's request. AF, Tabs 1 and 4.

## ANALYSIS AND FINDINGS

### Legal Standard

In appeals involving performance-based actions under 5 U.S.C. Chapter 43, the agency must prove by substantial evidence that: (1) it took its action under a performance appraisal system approved by the Office of Personnel Management (OPM); (2) the performance standards were valid; (3) the appellant's performance in at least one critical element was deficient as charged; and (4) it provided the appellant with a reasonable opportunity to demonstrate acceptable performance prior to effecting the removal action. *See Kadlec v. Department of the Army,* 49 M.S.P.R. 534, 539 (1991). "Substantial evidence" is that degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion even though other reasonable persons might disagree. 5 C.F.R. § 1201.56(c)(1). To meet its burden, the evidence presented by the agency need not be more persuasive than that presented by appellant. *See Lovshin v. Department of the Navy,* 767 F.2d 826, 844 (Fed. Cir. 1985); *Shuman v. Department of the Treasury,* 23 M.S.P.R. 620, 624 (1984). Moreover, an agency may remove an employee under 5 U.S.C. Chapter 43 for unacceptable performance in a single critical element. *See Leonard v. Department of Defense,* 82 M.S.P.R. 597, 599 (1999); *Stenmark v. Department of Transportation,* 59 M.S.P.R. 462, 467 (1993). Finally, an agency need not show that removal promotes the efficiency of the service. *Id.*

The parties stipulated prior to hearing that the agency took its action under a performance appraisal system approved by the Office of Personnel Management. AF, Tab 21. A stipulation is sufficient to prove the fact alleged. *See Swift v. Office of Personnel Management,* 48 M.S.P.R. 441 (1991). The parties further stipulated that the agency's performance standards were valid. AF, Tab 21. They further stipulated that the appellant's performance was deficient in critical element 1. *Id.* Finally, the parties stipulated that, after the

agency's decision letter notifying the appellant of its decision to remove her was issued on October 7, 2003, the appellant notified the agency on October 9, 2003, of a need for accommodation based on her learning disability. *Id.* As a result of that information from the agency, the agency held the removal action in abeyance until February of 2004. *Id.*

As noted above, the appellant contends that the agency's action was based on disability discrimination as a result of the agency's alleged failure to accommodate her disabling conditions of ADD and depression. AF, Tabs 1, 18, and 21. The appellant was advised of the burden of proof for this affirmative defense. AF, Tab 15. It is the appellant's burden to establish her affirmative defense by preponderant evidence. *See* 5 C.F.R. § 1201.56(c)(2).

## The agency has proven its charge by substantial evidence.

As discussed above, the agency must prove by substantial evidence that: (1) it took its action under a performance appraisal system approved by the Office of Personnel Management (OPM); (2) the performance standards were valid; (3) the appellant's performance in at least one critical element was deficient as charged; and (4) it provided the appellant with a reasonable opportunity to demonstrate acceptable performance prior to effecting the removal action. *See Kadlec v. Department of the Army*, 49 M.S.P.R. 534, 539 (1991). The appellant has stipulated to elements 1 through 3. AF, Tab 21. Accordingly, those elements are established by substantial evidence and will not be addressed further. However, the appellant refutes the agency's assertion that it provided her with an opportunity to demonstrate acceptable performance. *Id.*

An agency must demonstrate that it afforded an employee an opportunity to demonstrate acceptable performance before it may take an action under Chapter 43. *See Donaldson v. Department of Labor*, 27 M.S.P.R. 293, 297 (1985). The agency may satisfy this requirement by communicating to the employee the standards they must meet in order to be evaluated as demonstrating

performance at a level sufficient for retention. *Id.* The Board has held that an agency may develop the content of the applicable performance standards by informing the employee of specific work requirements through written instructions, memoranda describing unacceptable performance, and in a PIP. *See Johnson v. Department of the Interior*, 87 M.S.P.R. 359, 362 (2000); *Smith v. Department of Energy*, 49 M.S.P.R. 110, 116 (1991); *Donaldson,* 27 M.S.P.R. at 298.

Richard Mitchell, Assistant Chief of the Civil Trial Division, testified that he was the appellant's supervisor of record and rating official but noted that he did not work directly with the appellant. Rather, the appellant was assigned to a team of 4 or 5 senior attorneys who regularly gave assignments to the appellant. Mr. Mitchell stated that he told the attorneys that, during the appellant's PIP period, they were to be conscientious to give appellant work that she could complete. He stated that the work was to be given or confirmed by an electronic mail message and that he was to receive a copy of the electronic mail message. The witness said that he kept a "rough chart" of assignments that were given to the appellant to ensure that the appellant was given assignments, that the assignments were reasonable and that she was not being "swamped or overburdened" by work.

Mr. Mitchell testified without dispute that he met regularly with the appellant during the PIP period and, during those meetings, the appellant never indicated that she was overwhelmed with the work assignments she was given. He stated that the appellant was careful to advise him when she would be out of the office on leave or would be away for training and would indicate when she would be unavailable to do assignments. Mr. Mitchell testified, again without dispute, that he instructed attorneys to be conscientious about giving the appellant feedback about her work. He stated that they did give feedback although it may not have been given on every assignment. The witness asserted that some feedback was in the form of returning drafts to the appellant and

identifying problems and requesting revisions. Mr. Mitchell asserted that the attorneys often sent the appellant electronic mail messages with feedback which were copied to him or were forwarded to him by the appellant. Finally, he stated that the appellant was always free to talk to attorneys about assignments and deficiencies. As noted above, it is undisputed that, in the PIP letter provided to the appellant by Mr. Mitchell, the appellant was instructed to meet with certain managers in the department every other Tuesday to "discuss [her] progress on work assignments and any particular problems [she is] encountering with those assignments." AF, Tab 21; Ag. File, Tab 4V.

The appellant offered no testimony or other evidence to refute Mr. Mitchell's testimony. In fact, she failed to explain at hearing or during the adjudication of this appeal the basis for her assertion that she was not provided an adequate opportunity to demonstrate acceptable performance. The evidence of record establishes that the PIP period began on January 8, 2003. Ag. File, Tab 4V. In his letter regarding the PIP period, Mr. Mitchell informed the appellant that the PIP period would last until April 8, 2003. AF, Tab 21; Ag. File, Tab 4V. As noted above, it further instructed the appellant to meet with certain managers every other Tuesday to discuss her performance. *Id.* The appellant offered no evidence or argument that she did not receive feedback from the attorneys nor did she argue that she was precluded from following these instructions and from seeking feedback or direction from the attorneys who provided her with the assignments.

Mr. Mitchell testified without dispute that he met every two weeks during the PIP period with the appellant and the attorney who was the team captain of the team of attorneys who provided the appellant with work assignments. He stated that, during these meetings, he reviewed any specific issues or problems. The witness stated that he had specified a training program for the appellant and he would inquire of her as to how the training was progressing. He stated that the appellant did pursue training opportunities including a class at the agency's

advocacy center in South Carolina. Mr. Mitchell further stated that, during these meetings, he discussed assignments with the appellant including any scheduling issues or other problems. Again, the appellant offered no evidence or argument to refute the witness' testimony. In fact, the appellant testified at hearing that she did meet regularly with Mr. Mitchell and that she did take the training as advised by agency officials.

The appellant did assert at hearing that, during the midpoint of the PIP period, she asked Mr. Mitchell how she was doing and he informed her that he could not evaluate her performance at that time. Mr. Mitchell testified at hearing that he did not rate the appellant's performance during the PIP until after the PIP period was completed. However, as noted above, Mr. Mitchell testified that the appellant's assignments came from the attorneys on her team. He stated without dispute that the attorneys provided the appellant with feedback and that the appellant was free to seek additional feedback from them as desired.

I find no merit to the appellant's assertion that she was not provided with an opportunity to demonstrate acceptable performance. In the PIP, the appellant was advised in detail of the deficiencies in her performance. Ag. File, Tab 4V. She was provided with the requirements of element 1 and informed her of what was required to meet the standard. *Id.* The agency also provided the appellant with a 90-day period to demonstrate acceptable performance. *Id.* It is undisputed that the appellant met regularly with Mr. Mitchell and that feedback on her work assignments was offered and provided by the attorneys to whom she was assigned. Thus, I find that the appellant was provided with an adequate opportunity to improve her performance.

## The appellant failed to establish her affirmative defense of disability discrimination justifying reversal of the penalty.

The appellant further contends that she was subject to discrimination based on her disabling conditions. A *prima facie* case of disability discrimination generally includes a showing that the appellant is a qualified disabled person

under 29 C.F.R. § 1614.203(a)(6); that the action before the Board was based on the disabling condition in question; and to the extent possible, an articulation by the appellant of a reasonable accommodation. *See Trammell v. Department of Veterans Affairs,* 60 M.S.P.R. 79, 84 (1993). A disabled person is one who has a physical or mental impairment that substantially limits one or more of her major life activities; has a history of such an impairment; or is treated by her employing agency as having such an impairment. 29 C.F.R. § 1614.203(a). *See Trammell,* 60 M.S.P.R. at 84, fn. 2. However, the fact that an impairment prevents an employee from meeting the demands of a particular job does not necessarily mean that the employee is disabled. Rather, the inquiry is whether the impairment constitutes for the employee a significant barrier generally to the type of employment involved. *See Carr v. Department of Defense,* 61 M.S.P.R. 172, 178 (1994).

A disabled person who, with or without reasonable accommodation, can perform the essential functions of her position (or a vacant position to which she could be reassigned) without endangering the health and safety of herself or others, is a "qualified disabled person" entitled to reasonable accommodation by the agency, unless the agency can demonstrate that the accommodation would impose an undue hardship on its operations. 29 C.F.R. § 1614.203(a)(6). *See Trammell,* 60 M.S.P.R. at 84. *See also Savage v. Department of the Navy,* 36 M.S.P.R. 148, 151-152 (1988). An agency's failure to accommodate the known physical or mental limitations of a qualified disabled employee constitutes discrimination on the basis of disability. *See Trammell,* 60 M.S.P.R. at 84-5.

The appellant contends that she suffers from the disabilities of ADD and depression. AF, Tabs 18 and 21. She asserts that these disabilities substantially limit her in the major life activity of working. *Id.*

It is undisputed that, prior to the agency's October 7, 2003 decision to remove her from Federal employment, the appellant did not advise the agency of any alleged disability nor did she request any accommodation. AF, Tab 21. The

In regard to the condition of ADD, the appellant argued at hearing that she requested accommodation for this condition and it was not provided. As noted above, the appellant conceded that she never made this condition known until after the agency had issued its initial decision affirming its decision to remove her from employment. AF, Tab 21. Nonetheless, the appellant asserted that, because she notified the agency of her learning disability prior to the effective date of her termination and because the agency held the removal action in abeyance after she notified them of her need for accommodation, the agency was aware of the condition prior to her removal and thus had a duty to accommodate.

Ms. Wolfteich testified without dispute that, pursuant to the agency's collective bargaining agreement, the effective date of performance actions must be five days after the date the final decision is issued. She stated that, in the appellant's case, the agency provided an effective date ten days after the final decision because the five day period would have ended on a holiday and the ten day period ended at the conclusion of a regular pay period. Accordingly, the effective date of the appellant's removal was to be October 17, 2003. Ag. File, Tab 4F. Nonetheless, the agency's decision to remove the appellant was issued on October 7, 2003, and the agency had not been advised of any disabilities prior to that time. Thus, the agency could not have engaged in disability discrimination when it decided to remove the appellant from Federal employment. *Id.*

As noted above, the initial effective date of the appellant's removal was held in abeyance after the appellant alleged a disabling condition on October 9, 2004. Ag. File, Tab 4E. However, the agency did not cancel the removal action but merely held it in abeyance pending receipt of medical documentation. Ag. File, Tab 4D. The agency's decision to remove the appellant was made prior to the appellant's notification to the agency of her alleged disabling condition. Ag. File, Tab 4F. Phyllis Wolfteich and Michael Kearns testified that the agency held the action in abeyance to allow time to consider the appellant's medical

condition and determine whether accommodation was necessary. However, there is no evidence that the agency's removal decision was rescinded or was reissued. Rather, as noted above, the initial decision, issued in advance of any notice from the appellant of a disabling condition, was simply held in abeyance. Ag. File, Tab 4D. Thus, I find that the agency had no duty to accommodate the appellant's condition of ADD because it was not a disability known to the agency prior to its decision to remove the appellant.

Even if the agency was aware of the appellant's condition such that a duty to consider her alleged disabilities and request for accommodation had arisen prior to its decision to remove her, the result would not change. In her request for accommodation to the agency, the appellant requested use of a hand held tape recorder, that she be provided with written instructions and samples of work, that she be provided with "checklists" for each assignment and a time frame for completion, that she be assigned to one attorney as a mentor, that she be assigned an assistant to proofread her work and that she be given video tapes on how to use a Word Perfect word processing system. AF, Tab 17, Appellant's Exhibit E.

Phyllis Wolfteich testified that the appellant's accommodation requests were unclear and that additional information and medical documentation was requested. She stated that, for instance, it was not clear to the agency what the appellant wanted in the form of "checklists" and, accordingly, she proposed a meeting with the appellant to obtain clarification. At a meeting held on November 20, 2003, the appellant was asked about her requests. She explained that, in regard to the checklists, the appellant said that she wanted a checklist listing every task required for completion of each assignment. The witness testified that the agency considered the appellant's medical evidence and accommodation requests but found that it did not agree with the appellant that she would qualify for accommodation under the Rehabilitation Act because the appellant failed to demonstrate a substantial limitation on one or more major life activities.

The appellant submitted medical documentation to the agency. AF, Tab 17, Appellant's Exhibits B, C, and H. Her neurologist, Sheila Jahan, M.D., issued a statement on October 28, 2003, in which she stated that the appellant had been diagnosed with ADD[1] and suffers from depression. *Id.* at Appellant's Exhibit C. Dr. Jahan's statement does not indicate that the appellant is disabled or otherwise unable to perform her job duties. *Id.* In fact, Dr. Jahan stated that she had prescribed medication to improve the appellant's condition and to assist her in performing her daily tasks. *Id.* In an initial statement dated on October 30, 2003 from Dr. Rona Fields, the appellant's treating psychologist, she noted that the appellant had ADD which she characterized as "disabling but compensable." *Id.* at Exhibit B. She noted that the appellant also had "clinical depression" but she did not indicate that this condition was disabling. *Id.* Dr. Fields noted that the appellant had "problems in organizing and sequencing, particularly when she is under pressure. She can function best when she is given instructions in writing as well as orally. She needs to work in an environment with minimal noise distraction and work on her tasks sequentially without interruption." *Id.* Dr. Fields stated that she was referring the appellant for a brain scan to identify any neurological problems. *Id.* In a subsequent undated statement from Dr. Fields, she reiterated the appellant's diagnosis of ADD which was defined as a "grouping of symptoms rather than a definitive psychiatric condition."[2] *Id.* at Appellant's Exhibit H. Dr. Fields noted that the appellant had undergone a brain scan which indicated no "obstructions, lesions [or] seizure activity" but had indicated "chemical imbalances." *Id.* Nonetheless, she noted

---

[1] I note that Dr. Jahan's statement was typed and the typed diagnosis was a "learning disability." However, this was stricken by hand and a diagnosis of "ADD" was handwritten in. The change was not initialed by the physician but the appellant testified that it was done by Dr. Jahan.

[2] Although this statement is undated, Ms. Wolfteich testified without dispute that the appellant provided this document to her on December 8, 2003.

that the appellant can "handle work assignments if she is enabled by a workplace that is relatively free of distractions ... such as noises, people moving about and talking loudly, and a multitude of visual stimuli simultaneously." *Id.* Mr. Kearns testified without dispute that, in 2003, the appellant had a private office at the agency with a door that closed. Thus, the appellant had an office environment relatively free of distractions and, according to her psychologist's statement, she should have been able to perform her work duties. While all work environments have inherent distractions, the appellant submitted no other documentation nor did she offer any testimony at hearing to indicate further accommodations necessary to eliminate distractions in her workplace.

I concur with the agency that the appellant's medical documentation is insufficient to establish that she was a qualified disabled employee entitled to accommodation. As noted above, to establish a *prima facie* case of disability discrimination, the appellant must show, *inter alia*, that she is a qualified disabled person under 29 C.F.R. § 1614.203(a)(6). *See Trammell*, 60 M.S.P.R. at 84. A disabled person is one who, *inter alia*, has a physical or mental impairment that substantially limits one or more of her major life activities. 29 C.F.R. § 1614.203(a). *See Trammell*, 60 M.S.P.R. at 84, fn. 2. The inquiry is whether the impairment constitutes for the employee a significant barrier generally to the type of employment involved. *See Carr*, 61 M.S.P.R. at 178. The fact that an impairment prevents an employee from meeting the demands of a particular job does not necessarily mean that the employee is disabled. *Id.* *See also Miller v. U.S. Postal Service*, 43 M.S.P.R. 473, 477-78 (1990). Rather, the inquiry is whether " 'the particular impairment constitutes for the particular person a significant barrier to employment.' " *See Carr*, 61 M.S.P.R. at 178; *Mitchell v. Department of Defense*, 54 M.S.P.R. 641, 645 (1992).

The medical documentation cited by the appellant establishes only that the appellant has been diagnosed with ADD and depression but it does not establish that these conditions are a significant barrier to employment. Although

Dr. Fields initially noted that the appellant's condition was disabling, she did not indicate that the appellant could not perform her job duties. AF, Tab 17, Appellant's Exhibit B. Rather, Dr. Fields stated only that the appellant required a work environment relatively free of distractions. *Id.* at Appellant's Exhibit H. Thus, even if the appellant was a qualified employee, she submitted no other medical documentation supporting any request for any additional accommodations. Moreover, it is simply not reasonable to expect that any work environment would be completely free of distractions. Nonetheless, in this case, the appellant had a private office with a door that closed which would minimize any such distractions.

I note that, at hearing, the appellant appeared to allege a violation of agency policy in that the tax division in which the appellant was employed did not have an "accommodation coordinator" to assist with accommodations for disabled employees. The appellant submitted the agency's "Manual and Procedures for Providing Reasonable Accommodation." AF, Tab 17, Appellant's Exhibit M. This document provides that each component of the agency shall designate an adequate number of "accommodation coordinators" to "serve as contact persons for making workspace accessible to individuals with disabilities and are responsible for procuring furniture, equipment, and services...[T]hey will maintain all accommodation related materials and compile cumulative data for tracking purposes." *Id.* at Page 4. The appellant alleged at hearing that the agency failed to identify such a person for her department.

The appellant's allegation does not support any assertion of disability discrimination. Rather, an allegation of a violation of agency's procedural law, rule or regulation is a claim of harmful procedural error. The appellant did not allege any affirmative defense of harmful procedural error prior to hearing and, accordingly, any such allegation at hearing was untimely. AF, Tab 18. Moreover, even if the appellant's argument was considered, to prove harmful procedural error, the appellant must prove that the agency committed an error in

the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *See* 5 C.F.R. § 1201.56(c)(3). The burden is upon the appellant to show that the agency committed an error and that the error was harmful, *i.e.*, that it caused substantial prejudice to her rights. *See Daneshpayeh v. Department of the Air Force*, 57 M.S.P.R. 672, 682 n. 9 (1993), *aff'd*, 17 F.3d 1444 (Fed.Cir.1994) (Table). The appellant offered no such evidence or argument in this case. Ms. Wolfteich testified without dispute that the purpose of an "accommodation coordinator" is to procure facilities, services or equipment needed for an accommodation once that accommodation has been approved. She stated that, in this case, no accommodation was approved because the appellant was not found to be a qualified disabled employee entitled to accommodation. Accordingly, the accommodation coordinator role was not applicable to this case. Thus, whether an accommodation coordinator was even required need not be decided because the services provided by that person would never have been utilized. As discussed above, I concur with the agency that the appellant failed to establish that she was a qualified disabled person.

In summary, for all of these reasons, I find that the appellant is not a "qualified" disabled employee entitled to accommodation. In the agency's PIP action, the appellant was asked to identify any disabled condition. AF, Tab 4V. She did not do so. In the proposal to remove, the appellant was provided an opportunity to reply and present any relevant evidence and argument to be considered in the agency's decision. Ag. File, Tab 4H. Although the appellant filed a reply, she did not advise the agency of any medical condition affecting her work performance nor did she request any accommodation. Ag. File, Tab 4G. At no time prior to the agency's decision to remove her was the agency aware of any alleged disability or need for accommodation. The agency is required to accommodate only known medical conditions. *See* 29 C.F.R. § 1614.203(c).

Further, even if the agency had a duty to consider the appellant's evidence of disability and accommodation requests, the appellant's medical evidence failed to demonstrate that the appellant's disabilities substantially limited one or more of her major life activities. *See Carr,* 61 M.S.P.R. at 178. Her medical evidence noted only problems with some tasks but no difficulties with working in general. AF, Tab 17, Appellant's Exhibits B, C, and H. Further, even if the appellant was a qualified disabled employee entitled to accommodation, the last medical document submitted by the appellant noted only that the appellant needed a work environment relatively free of distractions. AF, Tab 17, Appellant's Exhibit H. The appellant had a private office and failed to submit any evidence or argument to the agency or the Board as to what additional accommodations were necessary to minimize distractions as requested by her medical provider. Consequently, for all of these reasons, I find that the appellant has failed to establish by preponderant evidence that she was subject to disability discrimination.

<u>The agency's penalty of removal is warranted.</u>

As discussed at length herein, the agency submitted substantial evidence to establish that the appellant's performance was unacceptable. Further, the appellant failed to establish her affirmative defense by preponderant evidence. Consequently, the agency's choice of action to be taken was permissible, and is not subject to further review by the Board. *See* 5 U.S.C. § 4303(a). *See also Lisiecki v. Merit Systems Protection Board,* 769 F.2d 1558 (Fed. Cir. 1985).

### DECISION

The agency's action is AFFIRMED.

FOR THE BOARD:

Sherry A. Armstrong
Administrative Judge

## NOTICE TO PARTIES CONCERNING SETTLEMENT

The date that this initial decision becomes final, which is set forth below, is the last day that the administrative judge may vacate the initial decision in order to accept a settlement agreement into the record. *See* 5 C.F.R. § 1201.112(a)(5).

## NOTICE TO APPELLANT

This initial decision will become final on ____AUG   5 2004____, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if this initial decision is received by you more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. The date on which the initial decision becomes final also controls when you can file a petition for review with the Equal Employment Opportunity Commission (EEOC) or with a federal court. The paragraphs that follow tell you how and when to file with the Board, the EEOC, or the federal courts. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file your petition with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be postmarked, faxed, or

hand-delivered no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you fail to provide a statement with your petition that you have either mailed, faxed, or hand-delivered a copy of your petition to the agency, your petition will be rejected and returned to you.

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION REVIEW

If you disagree with the Board's final decision on discrimination, you may obtain further administrative review by filing a petition with the EEOC no later than 30 calendar days after the date this initial decision becomes final. The address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

## JUDICIAL REVIEW

If you do not want to file a petition with the EEOC, you may ask for judicial review of both discrimination and nondiscrimination issues by filing a civil action. If you are asserting a claim under the Civil Rights Act or under the Rehabilitation Act, you must file your appeal with the appropriate United States district court as provided in 42 U.S.C. § 2000e-5. If you file a civil action with the court, you must name the head of the agency as the defendant. *See* 42 U.S.C. § 2000e-16(c). To be timely, your civil action under the Civil Rights Act, 42 U.S.C. § 2000e-16(c) must be filed no later than 30 calendar days after the date this initial decision becomes final. If you are asserting a claim under the Age Discrimination in Employment Act, your claim must be filed with the appropriate United States district court as provided in 29 U.S.C. § 633a(c). In some, but not all districts you may have up to 6 years to file such a civil action. *See* 28 U.S.C. § 2401(a).

If you choose not to contest the Board's decision on discrimination, you may ask for judicial review of the nondiscrimination issues by filing a petition with:

> The United States Court of Appeals
> for the Federal Circuit
> 717 Madison Place, NW.
> Washington, DC 20439

You may not file your petition with the court of appeals before this decision becomes final.    To be timely, your petition must be received by the court of appeals no later than 60 calendar days after the date this initial decision becomes final.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent by regular mail this day to each of the following:

### Appellant

Patricia L. Baker
3971 Clay Place, NE
Washington, DC 20019

### Appellant Representative

Barbara Kraft, Esq.
Beins, Axelrod & Kraft, Gleason & Gibson, P.C.
1717 Massachusetts Ave., NW., Suite 704
Washington, DC 20036

### Agency Representative

Gregory Kelch
Department Of Justice
General Counsel
P.O. Box 813
Ben Franklin Station
Washington, DC 20044

### Other

Kenneth L. Bates
U.S. Office of Personnel Management
Employee Relations Division
1900 E Street, NW, Room 7412
Washington, DC 20415

July 1, 2004
(Date)

Cynthia L. Boston
Legal Assistant